UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TIMOTHY THOMPSON, JR., *et al.*,  CIVIL ACTION

versus  NO. 11-541

ABBOTT LABORATORIES, INC.  SECTION "C" (2)

### ORDER AND REASONS[1]

Before the court is Defendant's, Abbot Laboratories, Inc., Motion to Dismiss Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

After a thorough review of the law, the record, and the memoranda of counsel, the Defendant's motion to dismiss is **GRANTED** for the following reasons.

**I. Background**

Depakote, a drug manufactured by Defendant, Abbott Laboratories, Inc. ("Abbott"), was put into the stream of commerce and made available to the public in 1978 to treat some forms of epilepsy. (Rec. Doc. 1 at 5). In the mid-1990s, Abbott promoted Depakote for other uses such as mild depression, depressive stage of bipolar disorder, and chronic pain such as migraines. *Id.* at 7. During that time, scientific articles indicated that women of child-bearing age should weigh the potential risks which Depakote could pose to a fetus. *Id.* at 6. It was found that Depakote's primary component - valproic acid - if taken during the first trimester, could cause birth defects such as: spina bifida, cleft palate, limb and digital deformities, facial dysmorphism, mental developmental delays, genitourinary malformations, and heart defects. *Id.*

Jessica Pearson Thompson ("Mrs. Thompson") was prescribed Depakote in 1998 to manage

---

[1] Natasha Manuel, a third year student at Loyola University New Orleans College of Law, contributed significantly to the research and preparation of this decision.

her depression. *Id.* at 3. Mrs. Thompson continued to use Depakote through the pregnancy and on November 22, 2000, Mrs. Thompson prematurely gave birth to Timothy Gabriel Thompson ("Timothy"). *Id.* Timothy had serious birth defects, including but not limited to: congenital heart disease, club feet, genitourinary malformations, large ventricular septal defect, various neurological problems, mental developmental delays and chromosome 18 deletion. *Id.* at 4. She resumed taking Depakote and the following year, Mrs. Thompson became pregnant again. *Id.* She gave birth to a stillborn on January 8, 2002. *Id.* In March 2002, Mrs. Thompson discontinued use of Depakote. *Id.* In March 2003 and September 2006, she gave birth to two healthy children. *Id.*

## II. Law and Analysis

### A. Standard of Review

In analyzing Rule 12(b)(6), the court will adopt "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). For a plaintiff to succeed in overcoming a 12(b)(6) motion, the plaintiff must produce sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly,* 550 U.S. 554, 547 (2007). These factual allegations, assumed true, must be more than speculative in nature. *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 202 (5th Cir. 2007).

### B. Choice of Law

In diversity cases, "federal courts must apply state substantive law." *Id.* at 205; *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938). The court applies the choice-of-law rules of the forum state when determining which state's law controls. *In Re: Katrina Canal Breaches Litigation,* 495 F.3d 191, 206 (5th Cir. 2007). Neither party contests that Louisiana's substantive law controls in the present dispute.

**C. Prescription**

Abbot moves for dismissal of Plaintiffs' claims by arguing that these claims have prescribed. The prescriptive period for a tort action is one year from the date the injury or damage is sustained. La. Civ. Code art. 3492. "Prescription does not run against one who does not know of the facts upon which his cause of action is based, as long as that ignorance is not willful, negligent or unreasonable." *Northwestern Mutual Life Ins. Co. v. Hart,* 1996 WL 419804 at *1. The prescriptive period commences when the plaintiff(s) obtain actual or constructive knowledge of facts indicating themselves as victim of tort. *In re Medical Review Panel of Lafayette,* 860 So.2d 86, 86 (5th Cir. 2003). "Notice sufficient to excite attention and put the injured party on guard and call for inquiry" qualifies as constructive knowledge, and the plaintiff must use reasonable diligence to obtain this knowledge once put on notice. *Northwestern,* 1996 WL 419804 at *1. Once the prescriptive period has passed, the plaintiff has the burden of showing that the claim has not prescribed. *Bouterie v. Crane,* 616 So.2d 657 (La. 1993).

The Plaintiffs in this case rely on the decision of *Wimberly v. Gatch*, which presented the doctrine of *contra non valentum.* 635 So.2d 206 (La. 1994). In that case, parents of a child who suffered through several incidents of sexual molestation, brought suit against the molester. *Id.* at 206. The molester argued that the parents brought suit outside of the prescriptive period. *Id.* at 211. The court held in favor of the parents, suspending the prescriptive period because the parents failed to discover the molester's tortious conduct "for reasons external to their own will." *Id.* at 216. The plaintiffs in *Wimberly*, like those in the case at hand, argued that the theory of *contra non valentum,* an exception to prescription, applied. (Rec. Doc. 1, 10).

*Contra non valentum* means "prescription does not run against a party unable to act."

*Hillman v. Akins,* 631 So.2d 1 (La. 1994).  This doctrine applies when a case falls within the following four categories:

> (1) Where there is some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> (2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
> (4) Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Marin v. Exxon Mobil Corp.,* 48 So. 3d 234, 245 (La. 2010).  The first two factors do not have relevance in this case.  Although the Plaintiffs refer only to the fourth category in their Opposition to Defendant's Motion to Dismiss, the case at hand implicates the both third and fourth category, or "the discovery rule."  *Wimberly v. Gatch,* 635 So.2d 206 (La. 1994).  The *contra non valentum* doctrine has generally been narrowly interpreted by Louisiana case law.  *Wilson v. Hargroder,* 46 F.3d 67 (La. 1995).

In *Wimberly,* the court found that the case fell within the third and fourth categories.  In relation to the third category, the court held that the plaintiffs, parents of the minor child, were unable to file suit because plaintiffs did not discover the abuse as a result of the defendant's tortious conduct.  *Id.* at 215.  The defendant's actions took over the will of their son, which resulted in their son not exposing the abuse due to his reaction to the traumatic experience.  *Id.*  Similarly, Plaintiffs argue that this exception would apply to the case at hand when they were unable to file suit due to the negative effects of Defendant's conduct of inadequate warning, construction or composition defect, design defect and breach of express warranty.  Yet, this argument fails because Defendant placed a "black box warning" on Depakote, which stated:

**TERATOGENICITY**

> VALPROATE CAN PRODUCE TERATOGENIC EFFECTS SUCH AS NEURAL TUBE DEFECTS (E.G. SPINA BIFIDA), ACCORDINGLY, THE USE OF DEPAKOTE TABLETS IN WOMEN OF CHILDBEARING POTENTIAL REQUIRES THAT THE BENEFITS OF ITS USE BE WEIGHED AGAINST THE RISK OF INJURY TO THE FETUS. THIS IS ESPECIALLY IMPORTANT WHEN THE TREATMENT OF A SPONTANEOUSLY REVERSIBLE CONDITION NOT ORDINARILY ASSOCIATED WITH PERMANENT INJURY OR RISK OF DEATH (E.G. MIGRAINE) IS CONTEMPLATED. SEE WARNINGS, INFORMATION FOR PATIENTS. <u>AN INFORMATION SHEET DESCRIBING THE TERATOGENIC POTENTIAL OF VALPROATE IS AVAILABLE FOR PATIENTS.</u>

(Rec. Doc. 15 at 2). Additionally, no evidence exists showing that the alleged tortious acts of Defendant overcame the will of Plaintiffs, preventing Plaintiffs from filing suit within the prescriptive period.

As for the fourth factor, the "discovery rule" relates to the constructive knowledge of the plaintiff. The discovery rule states the prescriptive period begins when the injured party "discovers or should have discovered" the facts underlying his or her cause of action. *Kendall Co. v. Southern Medical Supplies, Inc.,* 913 F. Supp. 483, 487 (E.D. La. 1996). As stated above, the prescription period commences "when it can be objectively determined that the exercise of reasonable diligence would have alerted a reasonably minded plaintiff of the reasonable possibility that it was the victim of tortious conduct." *Id.* at 488.

In *Turnage v. Columbia Lakeside Hospital,* the court held against a plaintiff who brought suit in 1996, claiming the suspension of the prescriptive period under the discovery rule, after a blood transfusion performed in 1975 caused her to suffer from Hepatitis C. 731 So.2d 919, 922 (5th Cir. 1999). The court found that because the plaintiff knew she had contracted hepatitis in 1975, which could have been a result of a blood transfusion, the discovery rule did not apply, as the plaintiff could have used reasonable diligence and brought her claim within the prescriptive period. *Id.*

Similarly, the Plaintiffs knew of Timothy's medical conditions in 2000. (Rec. Doc. 1 at 3). While the complaint states that the Plaintiffs first obtained information regarding a connection between birth defects and Dekapote less than a year before filing the present suit, this allegation fails to establish that they used reasonable diligence upon Timothy's birth to determine whether there was a link between Mrs. Thompson's use of Dekapote and Timothy's birth defects. *Id.* at 10. The Plaintiffs could have discovered that Dekapote caused their minor son's health issues and the stillbirth of their second child, had they used reasonable diligence following the births of both of their children in 2000 and 2002. (Rec. Doc. 1 at 4). As previously stated, scientific articles from the mid-1990s and the "black box warning" on the Depakote label revealed the possible birth defects resulting from Dekapote use during pregnancy. *Id.* at 6. If the Plaintiffs had used reasonable diligence, they could have obtained this information and brought forth their claims within the prescriptive period, yet they failed to do so until approximately ten years later.

Therefore, the Plaintiffs' claims do not fall under the exceptions within which *contra non valentum* applies. Thus, the prescriptive period cannot be suspended, and the Plaintiffs' claims should be dismissed.

### III. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED.

New Orleans, Louisiana this 19th day of July, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE